### WILLIAMSON v. TAYLOR *ET AL.*

(124 S. E., 645)

1. PRINCIPAL AND AGENT—WHETHER PERSON TO WHOM PLAINTIFF PAID MONEY WAS DEFENDANT'S AGENT HELD FOR JURY.—In action for margins on contracts for future delivery of cotton, question of whether person with whom plaintiff dealt and to whom he paid the money was defendant's agent, *held* for jury.

2. PRINCIPAL AND AGENT—TESTIMONY THAT WITNESS. WAS TOLD TO DEAL WITH DEFENDANT THROUGH ALLEGED AGENT BY OTHER UNDISPUTED AGENT HELD ADMISSIBLE.—In action for margins on contracts for future delivery of cotton, defended on the ground that person with whom plaintiff dealt and to whom plaintiff paid' money was not defendant's agent, testimony that witness was told to deal with defendant through such agent by other person, who was undisputedly agent of defendant, *held* admissible.

3. BROKERS—ELEMENTS OF AUTHORITY OF "BROKER" STATED.—A broker is a species of agent whose duty is ordinarily to bring the parties together so that they may consummate between themselves the contemplated transaction, and is not supposed to have possssion of principal's goods or to collect from purchaser any part of the purchase price, but his limited authority may be expressly or impliedly extended by the principal.

4. PRINCIPAL AND AGENT—AUTHORITY TO RECEIVE PAYMENTS FOR DEFENDANT FROM PLAINTIFF HELD QUESTION FOR JURY, IN PLAINTIFF'S ACTION THEREFOR.—In action to recover margins on contracts for future delivery of cotton, in which defendant claimed that person with whom plaintiff dealt and to whom plaintiff paid the money had no authority to receive such payments, evidence *held* to make question of such authority one for jury.

Before JOHNSON, J., Greenwood, October, 1923.  Reversed.

Action by C. E. Williamson against W. C. Taylor and W. E. Hutton & Co.  From a judgment of nonsuit as to last named defendant, plaintiff appeals.

*Messrs. Grier, Park & McDonald,* and *W. P. Greene,* for appellant, cite: *Proof of agency:* 2 C. J., 421; 113 S.

Note: On the question as to agent's authority to accept payment, see note in 19 L. R. A. (N. S.), 324.

C., 499; 117 S. E., 595; 97 S. C., 148; 2 C. J., 942; 2 Wig., Evid., Sec. 1078. *Question of agency for the jury:* 21 R. C. L., 821, 822; 124 S. C., 490. *Agency by estopel:* 2 C. J., 461; 7 S. C. L., 821; 117 S. E., 594; 124 S. C., 30; 123 S. C., 517; 21 R. C. L., 838, 839. *Knowledge received by agent imputable to his principal:* 83 S. C., 521; 74 S. C., 227; 91 S. C., 487; 77 S. C., 48; 37 S. C., 88.

*Messrs. Mays & Featherstone* and *F. S. W. Hart,* for respondent, cite: *Agency:* 2 C. J., 420, 942. *No agency by estoppel:* 2 C. J., 461, 462. *Hutton not liable to Taylor's customers:* 44 N. E., 171; 93 N. Y. S., 126; 130 N. E., 749. *Orders taken by traveling salesman not binding until accepted by principal:* 68 S. C., 303; 37 L. R. A. (N. S.), 352; 41 L. R. A. (N. S.), 1019; 2 C. J., 595, 553; Ann. Cas. 1912-B, 355; 61 S. W., 9; 82 Pac., 292. *Knowledge by traveling salesman could not be imputed to principal:* 2 C J., 865.

October 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This case presents really only one question. The plaintiff alleges that he paid twelve hundred fifty dollars for contracts for future delivery of cotton to W. E. Hutton & Co., through W. C. Taylor, their agent. The plaintiff alleges that, while he was entitled to profits on his contracts, he had been unable to get back even the money he had paid on the contracts, and this action is for the money actually paid. This action is against both Taylor and W. E. Hutton & Co. Taylor is in default. W. E. Hutton & Co. deny that Taylor was ever their agent, and that the plaintiff dealt only with Taylor, and that they were not responsible for Taylor's contracts. The money was paid to Taylor. The presiding Judge held that there was no evidence that Taylor was the agent of W. E. Hutton & Co., and excluded all of Taylor's statements and granted a nonsuit as to the de-

fendants, W. E. Hutton & Co. In this his Honor was in error.

The record shows:

"Mr. J. M. Altman, New York—Dear Sir: Confirming conversations with you, and subject to the approval of the New York Cotton Exchange, we will employ you for a period of one year from date, on a salary of four thousand dollars per year, you to come into our New York office as headquarters, with the intention of building up and developing our business in cotton.

"Very truly yours,

"W. E. HUTTON & Co.

"Accepted by J. M. Altman."

W. S. Wells, a witness for the plaintiff, testified:

"Witness: I was solicited by J. M. Altman and Mr. Taylor to change my contract. I was with Rose & Son with a hundred bales of cotton. Rose trimmed me down pretty close, got down in twenty points of low. Altman and them came to me and said—

"Court: I rule that you can tell anything that Altman said to you.

"Witness: Mr. Altman came to me and asked me if I knew that Rose & Son were going under. I said that I heard it. He said, 'You had better change your contract to Hutton & Co.' I said, 'All right; I will do it, if you say so.' Altman told me, if I would change it and buy a contract through Taylor, that it would be absolutely O. K., and I did so. They bought me a contract and Hutton & Co. owes me for a contract now, for October.

"Mr. Featherstone: We move to strike out the last part of that testimony with reference to Hutton & Co. owing him for a contract.

"Court: Strike it out, Mr. Stenographer. Gentlemen of the jury, disregard that part of the testimony."

It was error to strike out the evidence. It has not been denied that Altman was the agent of W. E. Hutton & Co.; that he was in Taylor's office, and not only declared that Taylor was the agent of W. E. Hutton & Co., but allowed Taylor to solicit business, on the ground that he (Taylor) was the agent of W. E. Hutton & Co. There was evidence to go to the jury as to the agency of Taylor. The evidence as to the statement of Taylor should have been admitted and the case sent to the jury.

The appellant complains that his Honor held that there was no evidence to show that the payments made by the plaintiff to Taylor ever went to W. E. Hutton & Co. In justice to the presiding Judge, it ought to be said that this holding was based on the idea that there was no evidence of agency. His Honor very properly said that, if there was evidence of agency, it made no difference whether the principal got the money or not.

The judgment is reversed.

MR. JUSTICE WATTS concurs.

MR. JUSTICE COTHRAN (concurring in result): In my opinion, the Circuit Judge committed error in directing a verdict for the defendants, Hutton & Co. I, therefore, concur in the result of Mr. Justice Fraser's opinion, remanding the case for a new trial, for the reasons which follow.

This is an action brought by the plaintiff for $1,250.00 margins on certain cotton contract for future delivery, which he claims to have paid to the defendant, Taylor, as the agent of the defendants, Hutton & Co., and which, by reason of the fact that the market went in his favor, he is entitled to have returned to him. It does not appear that he is making claim for the profits upon said contracts, which are alleged to have amounted to over $300.00.

The facts are these: Williamson was, and is, an extensive dealer in cotton and cotton contracts, living at Abbeville; Taylor was the proprietor of an establishment at Greenwood, where he had an office rented in his own name,

equipped with the usual paraphernalia of a brokerage concern; there were blackboards upon which the quotations of stocks and commercial commodities were constantly posted, chairs for the interested congregation, and other accommodations.  He was a member of the New Orleans Cotton Exchange, in which he did business on his own account, but not of, the New York Cotton Exchange; he handled business on the floor of the latter, through Hutton & Co., who were members.

On May 19, 1922, Williamson, by telephone, directed Taylor to open certain trades in cotton futures for him.  It is assumed that Taylor accordingly wired Hutton & Co., for at 12:29 p. m. on that same day Hutton & Co. wired Taylor that they had opened the trades as indicated, in Taylor's name.  The telegram was initialed in pencil by Taylor and mailed to Williamson, confirming it by letter of the same date.  While the telegram indicated that Hutton & Co. were dealing directly with Taylor, and the letter of confirmation indicated that Williamson was dealing directly with Taylor, the transmission of the telegram by Taylor to Williamson in the manner stated was a clear indication by Taylor that the contracts which he had entered into with Hutton & Co. were for the benefit of Williamson, and disclosed the manner in which Taylor had carried out the telephone order of Williamson.

Williamson had instructed Taylor to draw on him for the margins through the bank, which was done.  The drafts were paid and were deposited by Taylor to the credit of his personal account.  There were other transactions of a similar nature between Williamson and Taylor, the details of which are not set forth in the record for appeal, involving payments of margins, aggregating, all told, $1,250.00.  All of the transactions were closed out in July, showing a profit to Williamson of over $300.00.

About July 4, 1922, Taylor closed his office and left for parts unknown, owing quite a good deal of money to Hutton

& Co. and to his customers. The plaintiff then made demand upon Hutton & Co. for the margins paid by him to Taylor and for his profits on the various deals, and, upon refusal, instituted this action for the margins, $1,250.00, against both Hutton & Co. and Taylor, based upon the theory, as alleged in the complaint, that Taylor "held himself out to be connected with the firm of W. E. Hutton & Co.," and that the money had been paid to Taylor "for the purpose of purchasing and selling cotton for future delivery through the said W. C. Taylor and his New York representative, W. E. Hutton & Co." (evidently intending to say "through the said W. C. Taylor, the representative of W. E. Hutton & Co.") ; that Taylor accepted the money for Hutton & Co. for the purpose indicated, and that it was paid to them.    It is specifically alleged that "the said W. C. Taylor acted as the middleman or agent for the forwarding of the said money."

The plaintiff offered abundant evidence to sustain the allegation of the complaint that Taylor had a business connection with Hutton & Co.; that he was in —— the representative of Hutton & Co., at Greenwood, in securing business for them; in other words, that he was a broker, an intermediary, or, as alleged in the complaint, a "middleman", between Hutton & Co. and those who wished to purchase and sell cotton for future delivery.

His Honor, the presiding Judge, excluded certain testimony, the declaration of one Altman, and accredited traveling representative of Hutton & Co., the declarations of Taylor and certain documentary evidence, tending to show that Taylor was so engaged at Greenwood as the representative of Hutton & Co.  To this exclusion the plaintiff has excepted.  My view of this matter is that this excluded evidence added nothing to what had already been amply developed, and which was practically conceded, that Taylor was doing business as the representative of Hutton & Co. at Greenwood, and that the scope of his engagement was to

bring third persons in contractual relations with Hutton & Co. in the purchase or sale of cotton for future delivery.

I shall, therefore, treat the questions involved as if it were a conceded fact that the relation which Taylor sustained to Hutton & Co. was that of a broker, an intermediary, a middleman, a person engaged by authority of his principal to bring into contractual relations his principal and third persons.

His Honor, the presiding Judge, granted the motion of the defendants, Hutton & Co., for a nonsuit, upon the ground that there was no evidence tending to establish the relation of principal and agent between the defendants, Hutton & Co., and the defendant, Taylor. He held that the contracts upon which the plaintiff relied were within the gambling statute, but that there was no evidence tending to show that Hutton & Co. received the money which Williamson paid to Taylor.

I shall content myself with a consideration of the ground that there is no evidence that, in the transactions between Williamson and Taylor, Taylor acted as the agent of Hutton & Co. In this ruling, I think that his Honor, the presiding Judge, was clearly in error, for the reasons which follow.

As indicated above, I do not think that there is the slightest doubt but that Taylor had such a business connection with Hutton & Co. as constituted him a broker, an intermediary, a middleman, and that his engagement with Hutton & Co. was to bring about contractual relations between them and third parties. But it does not necessarily follow that this relation imposed upon Hutton & Co. liability for all that Taylor may have done, particularly as in this case, for receiving money from customers who were entering into contractual relations with Hutton & Co. through their broker.

A broker is a species of agent with peculiar powers. He is not supposed to have possession of the principal's goods, concerning which a contract is to be entered into between the principal and a third person. He is

not supposed to collect from the purchaser any part of the purchase price, and is not authorized to do so by the terms and nature of his employment. His duty ordinarily is simply to bring the parties together, his principal and the third person, who will consummate between themselves the contemplated transaction. But he is none the less an agent, although with greatly circumscribed duties and powers. 9 C. J., 510, 515, 518, 665, 667, 668, 670, 671. *Ayres v. Thomas* 116 Cal., 140; 47 Pac., 1013. *Higgins v. Moore*, 34 N. Y., 417.

"A broker is a mere intermediate agent, negotiating between buyer and seller. As broker, he is not entitled to the possession of the property which is the subject of sale or purchase; nor does he, in the character of broker, receive or pay the price, nor is he authorized to do so. It is his office to negotiate contracts between others, which they carry into execution by performance." *Higgins v. Moore*, 34 N. Y., 417.

"Primarily a broker employed to do a particular thing is the agent of the party who first employed him, and he cannot, without the full and free consent of both parties, be the agent of both throughout the transaction; but in so far as he acts strictly as a middleman, to bring the parties together or to execute the contract after the parties have agreed on the terms, such as to effect a purchase or sale of property, he is the common agent of both parties." 9 C. J., 518.

This dual agency covers only such transactions as are ordinarily within the scope of the broker's agency; that is, to bring the parties together when they are supposed to consummate their trading. As has been seen, he has no possession or control of the property to be dealt with; he has no authority to make or receive payments upon the proposed contract. If, however, his limited authority as a broker is extended by express or implied authorization

by the principal, the latter will be bound by his acts under such extended authority.

"Except in case of a customer or usage of trade to the contrary, or an estoppel arising against the principal, a payment made to a broker and not received by the principal is not ordinarily binding upon the latter as a payment to him, unless the broker has express or implied authority to receive it, in which case the rights of the parties are the same as if the payment had been made to the principal." 9 C. J. 671.

"A person may be estopped to deny the agency of a broker who has acted for him in negotiating a contract. So, if the principal holds out the broker as having a certain authority, he cannot as against one who deals with the broker on the faith thereof deny that such authority was in fact given." 9 C. J., 670.

The main question in this case is whether or not there was sufficient evidence of this extended authority on the part of Taylor to receive payments made by Williamson upon the contracts, which would bind Hutton & Co. to require a submission of such issue to the jury. It seems clear to me that, if the case were one of ordinary brokerage, where the broker's duty and authority were simply to bring the contracting parties together, his principal would not be responsible for money received upon a proposed contract, but that in this case there is evidence tending to show that Taylor was authorized by Hutton & Co. to receive and transmit to them such payments, and that the question should have been submitted to the jury.

The manner in which Hutton & Co. transacted business with Taylor shows clearly that it was understood that Taylor should make collections for margins upon contracts entered into through him. They knew, in the first place, that orders sent in by Taylor were not necessarily, or even probably, upon his own account; their representative, Altman, was fre-

quently in Taylor's place of business, his "bucket shop," saw
its equipment, and was introduced to prospective customers,
who were urged to deal with Hutton & Co. through their
representative, Taylor.   They wrote frequent letters to Tay-
lor, appreciative of his efforts in securing from others bus-
iness for them.   In one letter, referring to the contracts of
the Grendel Mills, they inquired whether they should be en-
tered in the name of the mills or of Taylor, showing that,
even if they had been entered in Taylor's name they knew
that Taylor was not acting upon his own account.   The or-
ders sent in by Taylor were sent in by wire and immediately
complied with by Hutton & Co., who wired confirmations,
without a dollar passing between Hutton & Co. and Taylor.
They must have relied upon Taylor collecting at the time
the margins from the customers, charged them up to Taylor,
and expected to be reimbursed by Taylor.   In addition to
his personal deposit account, Taylor opened a deposit ac-
count in the name of Hutton & Co., to which he applied from
time to time collections made by him, amounting to more
than $20,000.00, which Hutton & Co. constantly drew
against.   When the crash came, Taylor, it appears, was
largely indebted to Hutton & Co., manifestly on account
of margins collected by him, and for that reason Hutton
& Co. now propose to repudiate the agency of Taylor to do
that which their method of dealing had so plainly author-
ized.

"If the contract negotiated by a broker with a third
person in behalf of a principal is within the terms of his
authority, the principal is bound thereby.   Accordingly the
other contracting party may maintain an action against the
principal on the contract for breach thereof."   9 C. J., 667.

"If in negotiating a transaction in behalf of a principal
a broker acts within the terms of the authority which has
been conferred on him, either expressly or by implication,
the principal is bound thereby, and the other party may hold
him to the bargain."   9 C. J., 668.

Nor does it make any difference as to the rights of Hutton & Co. against Williamson, or of Williamson against Hutton & Co., upon the contracts consummated through Taylor, that the contracts were entered upon the books of Hutton & Co. as contracts between them and Taylor.

"A broker's relation to his clients is not affected by the fact that, in executing the client's orders, he assumes the position of principal towards third persons and with whom he deals." 9 C. J., 515.

"The principal is entitled to enforce a contract negotiated by his broker with a third person, and this is so, even though the contract is made in the broker's name and the principal is undisclosed." 9 C. J., 665.

If Hutton & Co. had the right under these contracts to proceed against Williamson, as unquestionably they had, then Hutton & Co. could not deny their liability upon them to Williamson; an element of their liability was their duty to return that which their agent, by authority plainly implied, had received upon the contracts.

MR. JUSTICE MARION concurs.

MR. CHIEF JUSTICE GARY did not participate.